### OREGON–WASHINGTON WATER SERVICE CO. v. CITY OF HOQUIAM et al.*

Circuit Court of Appeals, Ninth Circuit.
October 8, 1928.

No. 5549.

*Decree amended and rehearing denied 29 F.(2d) ——.

McCamant & Thompson, of Portland, Or., and Theo. B. Bruener, of Aberdeen, Wash., for appellant.

W. H. Abel, of Montesano, Wash., and James P. H. Callahan, of Hoquiam, Wash., for appellees.

Warren Olney, Jr., A. Crawford Greene, F. F. Thomas, Jr., and Victor E. Kleven, all of San Francisco, Cal. (McCutcheon, Olney, Mannon & Greene, of San Francisco, Cal., of counsel), amici curiæ.

Before RUDKIN, DIETRICH, and HUNT, Circuit Judges.

DIETRICH, Circuit Judge. This is an appeal from a decree entered in harmony with an order sustaining defendant's motion to dismiss the bill of complaint. By the complaint, which was filed June 1, 1928, it is shown that the plaintiff is the owner of a system of waterworks by which water is supplied to the defendant city of Hoquiam, in Chehalis county, Washington. The system was constructed under an ordinance passed by the city April 19, 1898, granting a franchise to one Harry C. Heermans, who, upon accepting its provisions, assigned his rights to the Hoquiam Water Company, a corporation. By the terms of the ordinance, Heermans and his grantees were to commence construction not later than May 30, 1898, and complete the system before September 30, 1898, and the complaint alleges that construction "was diligently prosecuted to completion in time and manner as in the ordinance provided." This we take to be in effect an averment of completion on or about September 30, 1898. Section 28 of the ordinance is as follows:

"The town of Hoquiam shall have the right to purchase, anything to the contrary notwithstanding herein, the waterworks system herein provided for, together with all or any of the tools, machinery or property connected thereto or used therewith, and all extensions thereof and additions thereto, or used therewith, and all extensions thereof and additions thereto, fifteen years after the completion of the same, at a price to be agreed upon by said town and the owners thereof; and in case the town and owners thereof cannot agree to a price to be paid therefor, then a price to be fixed by due process of law: Provided, however, that said town shall give the owner or owners or his or her or their agent, at least one year previous to the expiration of said fifteen years' notice of the desire of the town to purchase the same, and every five years after said fifteen years, said town shall have a like privilege to purchase the same by giving a like notice to said party or parties of at least one year."

Referring to this provision, the Hoquiam city council on April 6, 1927, duly passed an ordinance which, omitting the formal parts, is as follows:

"(1) That it is the desire of the city of Hoquiam, Washington, a municipal corporation, to purchase the waterworks system of the Hoquiam Water Company, of the city of Hoquiam, Washington, a corporation, together with all or any of the tools, machinery, or property connected thereto or used therewith, and all extensions thereof, and addi-

tions thereto or used therewith, pursuant to the right granted to said city under the provisions of section 28 of Ordinance No. 89 of the ordinances of the said city of Hoquiam.

"(2) That the city clerk be and she is hereby directed to forthwith notify in writing, said Hoquiam Water Company, a corporation, as required by said section."

By a state statute (section 9041, Remington's Comp. Stat.) it is provided that, before a city council can acquire or construct a water system, the question must be submitted to a vote of the electors, and it is alleged that pursuant to an ordinance of March 7, 1928, the question of the purchase of plaintiff's system was duly submitted to a vote of the electors and that at such election held on April 7, 1928, a large majority of the electors voted for the purchase. It is further averred that on June 28, 1927, after notice to it of the passage of the ordinance of April 6, 1927, the Hoquiam Water Company conveyed the entire system to the plaintiff, a Delaware corporation, that "plaintiff offered to sell" the system to the city at "a stated price," which offer the city officers declined to accept, and that, so it is alleged, "plaintiff and said city are unable to agree upon the price to be paid for said water system." In substance the prayer is that the court fix a price to be paid and require the city to pay it and take over the system. ■ Without deciding whether by the proceedings referred to the city has become unconditionally bound to purchase the system, we are clearly of the opinion that the decree of dismissal was right. The option of the city provided by the franchise ordinance was to purchase the system at the end of 15 years "after the completion of the same," or at the end of any subsequent 5-year period. The 5-year period now material would not expire until the 30th of September, 1928. This suit was commenced June 1, 1928, and the decree of dismissal appealed from was entered July 9, 1928. In the most favorable view to appellants, the ordinance of April 6, 1927, constituted an election to purchase pursuant to the terms of the original ordinance; that is, on September 30, 1928, and not before. The notice of desire or intention to purchase did not accelerate the date of either plaintiff's obligation to sell or the city's obligation to buy. It is immaterial that the provision for notice may have been intended primarily for plaintiff's benefit. Under its theory the ordinance option was a continuing offer, conditioned on the giving of the specified notice, to sell at a stated time, and the giving of the notice operated as an acceptance of the offer. The terms of the contract thus became definitely fixed and could not be changed at the will of either party alone in respect of date any more than in any other material particular. Good reasons readily suggest themselves why the city might not desire to consummate the purchase or to take over the system until the expiration of the full period of 30 years. from the time it was finished; but we need not indulge in speculation on that subject, for, without assigning reasons, it had the right to stand on the terms of its contract.

■ We are disinclined to look with favor upon plaintiff's suggestion that, though the suit was prematurely brought, the lower court should have held it for appropriate proceedings to be taken upon the maturity of the city's obligation. Aside from the question of time, the bill fails to disclose plaintiff's right or need to appeal to a court of equity for assistance. There is no showing that the city had declined or was unwilling to purchase at the stipulated time or for a price to be fixed in the manner prescribed by the alleged contract. Under the terms of the ordinance "due process of law" was to be invoked to fix the price only in case the parties could not agree. Neither party can resort to the courts until, without success, it has in good faith used reasonable efforts to agree upon a fair price. As is well known, litigation for such a purpose is extremely expensive and neither party should have that burden imposed until the necessity for such procedure becomes apparent. The only averments directly or remotely bearing upon that subject are those above quoted. Plaintiff offered to sell the system at a "stated price." What the stated price was, it does not disclose, nor does it allege that it was a fair price. Neither are we informed when, under that offer, the transaction would have to be consummated and the money paid, or why the offer, whatever it may have been, was rejected by the city. To be sure, it is alleged generally that the parties "are unable to agree upon the price," but in the absence of specific averments of what efforts, if any, were in good faith made, such an allegation must be regarded as a mere conclusion and ineffective for any purpose. It is to be borne in mind that plaintiff is not only appealing to a court of equity, but for relief of an extraordinary character. Before proceeding, the court should be advised specifically of the necessity; this for its own protection, and that defendant may not without cause be subjected to a heavy burden of expense.

Moreover, if it be assumed that the price named by plaintiff was in fact fair, and that otherwise the offer was not out of harmony with the contract, defendant was not bound to accept it forthwith. After concluding to purchase the system and the passage of the ordinance declaring its desire so to do, it had the right to make a detailed investigation during the period elapsing between the date of such election and the date the purchase was to be made, for the purpose of determining what would be a fair price. Such a determination, if intelligently made, requires the services of specially qualified appraisers and involves time. The city charges that plaintiff's precipitate haste in bringing this suit was for the purpose of forestalling an appropriate action in eminent domain. While its motives may not be highly material, if, as is asserted, there is provision made by the state statutes for a proceeding of that character, in such case, it may be a serious question whether plaintiff can be admitted to a court of equity, unless and until the city declines or fails seasonably to take the requisite steps for condemnation. Federal courts of equity do not exercise jurisdiction to render relief where there is a plain, adequate, and complete remedy at law. R. S. U. S. § 723; 28 USCA § 384.

The judgment is affirmed.